**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BISHOP GEORGE BLOOMER,** Individually, and **GG BLOOMER MINISTRIES**, a Foreign Non-Profit Corporation,

Plaintiffs,

v.

**THE WORD NETWORK OPERATING COMPANY, INC.**, a Foreign Profit Corporation, **CHURCH OF THE WORD,** d/b/a **THE WORD NETWORK CHURCH**, a Domestic Nonprofit Corporation, and **KEVIN ADELL**, Individually,

Defendants.

Case No. 2:22-cv-12433-NGE-DRG

Hon. Nancy G. Edmunds

---

**VERIFIED AMENDED COMPLAINT**
**AND DEMAND FOR JURY TRIAL**

Plaintiffs, Bishop George Bloomer ("Bishop Bloomer") and GG Bloomer Ministries, by and through their undersigned counsel, hereby files their Verified Amended Complaint for damages and demand for jury trial against Defendants, The Word Network Operating Company, Inc., ("TWN"), Church of the Word d/b/a The Word Network Church ("WNC") and Kevin Adell (collectively, "Defendants"), and in support thereof, alleges as follows:

## PARTIES

1. Plaintiff, Bishop Bloomer is a resident of the State of North Carolina.

2. Plaintiff, GG Bloomer Ministries, is a North Carolina Non-Profit Corporation.

3. Plaintiff, GG Bloomer Ministries demonstrates its racial identity through its sole owner, Plaintiff, Bishop Bloomer, who is an African American.

4. Defendant, TWN, is a Foreign Profit Corporation incorporated under the Laws of Delaware.

5. Defendant, TWN's principal place of business is in Michigan.

6. Defendant, TWN conducts continuous and systematic business in Oakland County, Michigan.

7. Defendant, WNC, is a Domestic Nonprofit Corporation in Michigan.

8. Defendant, WNC's principal place of business is in Michigan.

9. Defendant TWN is an operating and/or holding company that owns Defendant WNC.

10. Upon information and belief, at all times material to this action, Defendant Kevin Adell was and continues to be a resident of the State of Michigan.

11. In 2019, Defendant Kevin Adell was a resident of the State of Michigan.

12. The events described in this lawsuit primarily occurred in Oakland

County, Michigan.

13. At all times material hereto, Plaintiff Bishop Bloomer was a "Person" within the meaning of 42 U.S.C. § 1981, *et. seq.*

14. At all times material hereto, Plaintiff GG Bloomer Ministries was a "Person" within the meaning of 42 U.S.C. § 1981, *et. seq.*

15. Defendants have the capacity to make and enforce contracts under 42 U.S.C. § 1981.

16. Plaintiff Bishop Bloomer has an equal right under the law within the United States to make and enforce contracts, to sue, be a party, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

17. Plaintiff GG Bloomer Ministries has an equal right under the law within the United States to make and enforce contracts, to sue, be a party, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

18. At all times material to this action, Mr. Adell was the Owner of TWN which, in turn, owns WNC.

19. In 2019, Mr. Adell was the owner of TWN.

20. At all times material to this action, Mr. Adell was the President and/or Chief Executive Officer of TWN.

21. In 2019, Mr. Adel was the owner of WNC.

22. At all times material to this action, Mr. Adell regularly held and/or exercised the authority to hire and fire employees and contractors of TWN and WNC.

23. At all times material to this action, Mr. Adell regularly held and/or exercised the authority to control the contractual relationships of TWN and WNC.

24. At all times material to this action, Mr. Adell regularly held and/or exercised the authority to determine the work schedules for the employees and contractors of TWN and WNC.

25. At all times material to this action, Defendant Adell regularly held and/or exercised the authority to control the finances and operations of TWN and WNC.

26. By virtue of having held and/or exercised the authority to: (a) hire and fire employees and contractors of TWN and WNC; (b) enter into contractual relationships; (c) determine the work schedules for the employees and contractors of TWN and WNC; and (d) control the finances and operations of TWN and WNC, Mr. Adell was also an agent of TWN and WNC.

27. Defendants TWN and WNC are a single employer/integrated enterprise and/or joint employers and/or agents.

**JURISDICTION**

28. This Court has original jurisdiction over Plaintiffs' 42 USC § 1981

claims pursuant to 28 U.S.C. §§ 1331 and 1337.

29. The Court has supplemental jurisdiction of Plaintiffs' breach of contract, quantum meruit, and unjust enrichment claims pursuant to 28 U.S.C. § 1367 as these claims are so related to Plaintiffs' 42 USC § 1981 claims that they form part of the same case or controversy.

30. Jurisdiction to grant injunctive and declaratory equitable relief as well as damages is invoked pursuant to the statutes cited above.

## VENUE

31. Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims occurred within the Southern Division of the Eastern District of Michigan.

32. Defendants conduct substantial and not isolated business within the Southern Division of the Eastern District of Michigan.

33. Defendants have agents and employees in the Southern Division of the Eastern District of Michigan.

34. Defendants have a business located in the Southern Division of the Eastern District of Michigan.

## STATEMENT OF FACTS

35. Bishop Bloomer is African American.

36. Bishop Bloomer is a televangelist, pastor, and best-selling author.

37. Kevin Adell is Caucasian and the owner of TWN.

38. TWN is the largest African American religious network in the world.

39. Bishop Bloomer worked for Defendants as a preacher/television program host from approximately 2011 to September 2019 pursuant to a contractual relationship between Plaintiffs and Defendants.

40. Bishop Bloomer hosted the television programs "Rejoice in the Word" and "The First Word" on TWN and WNC.

41. Rejoice in the Word was a network show that focused on interviewing gospel celebrities and preachers around the nation.

42. The First Word was a show that promoted the sale of Christian products such as books, oils, etc.

43. Throughout his time working for Defendants, Bishop Bloomer increased TWN and WNC's revenue by, *inter alia*, selling Bibles, audio Bibles, and oils.

44. In September 2019, Station Manager Denise Johnson informed Mr. Adell of an online articled entitled" "Black Gospel Network PIMP Kevin Adell."[1]

45. The article states, in relevant part:

> [I]n the year 2000 Adell saw an opportunity to capitalize on the ignorance and vulnerability of the black community, and he seized it! He used his resources to acquire a platform that blacks couldn't afford, wouldn't afford, didn't know how to obtain on their own, or

---

[1] *See* https://babylon-today.com/2019/03/12/gospel-network-pimp-kevin-adell/

> simply didn't want and he rents his platform out to ignorant black people! He's not helping the black community- HE'S PIMPING THEM, AND GETTING PAID!
>
> . . .
>
> Adell and others like him are nothing less than glorified "massas" who's only interest in black people and their religious beliefs is how much money they can generate for him by using his platform to pimp out black talent!

46. On September 4, 2019, Mr. Adell sent a text message to Bishop Bloomer of the following digitally altered photo ("meme") that was originally included in the "Black Gospel Network PIMP Kevin Adell" article:



47. The meme depicts Mr. Adell as a "pimp" in a white fur coat.

48. The "pimp meme" depicts Bishop Bloomer and other African American clergy members in the background.

49. Bishop Bloomer and other African American clergy members are depicted as Mr. Adell's "ho" in this meme.

50. The meme from the article entitled "Black Gospel Network PIMP

Kevin Adell" intended to depict Mr. Adell as a pimp, and Bishop Bloomer as his "ho."

51. Mr. Adell sent this racist meme via text message to Bishop Bloomer.

52. By forwarding this meme to Bishop Bloomer, Mr. Adell acceded that he was Bishop Bloomer's "Massa" or "Master" as suggested in the article.

53. In response to receiving this text message, Bishop Bloomer advised Adell "That's not funny at all", to which Mr. Adell responded "Lol."

54. In response, Bishop Bloomer objected to Mr. Adell's race discrimination and harassment, and states:




55. Here, Bishop Bloomer unequivocally objected to Mr. Adell's race discrimination and harassment.

56. Defendants, however, never conducted any race discrimination and/or harassment investigations concerning and/or related to Bishop Bloomer.

57. In response to Bishop Bloomer's written race discrimination complaint, Defendants failed to take any effective remedial measures to stop the harassing behavior.

58. Instead, Mr. Adell doubled-down, retaliated against Bishop Bloomer and continued his harassment.

59. Mr. Adell also called Bishop Bloomer and placed the call on speakerphone with station managers, Dave Cheffield and Denise Johnson present.

60. During this call, Mr. Adell mockingly asked Bishop Bloomer if he received the "pimp meme."

61. Mr. Adell posed this question, while on speakerphone with Mr. Cheffield and Ms. Johnson, in an attempt to further humiliate Bishop Bloomer in front of his peers.

62. In response, Bishop Bloomer once again objected to the race discrimination, harassment, and retaliation Mr. Adell was subjecting him to.

63. In response, Mr. Adell dismissed Bishop Bloomer's objection, and hung up the phone.

64. Thereafter, Bishop Bloomer again objected to the race discrimination, harassment, and retaliation he was made to endure to Mr. Cheffield.

65. Defendants, however, did not investigate, and failed to take any effective and/or remedial action in response to Bishop Bloomer complaints.

66. The next day, and on September 5, 2019, Mr. Adell sent Bishop Bloomer a text message of a photo of Mr. Adell with a second individual who had his face scribbled in black marker (i.e. **Black Face)** next to Mr. Adell:




67. Mr. Adell sent this picture to further discriminate, harass, and retaliate against Bishop Bloomer based on his race.

68. Specifically, Mr. Adell was responding to Bishop Bloomer's complaint from the prior day where Bishop Bloomer advised Mr. Adell that the "pimp meme" has racist connotation and is "**equivalent to black face being put on a white man**" by sending him a "black face" scribbled out on a picture of a white man standing next to Mr. Adell. (emphasis added).

69. In an effort to further provoke and harass Bishop Bloomer, a few days later, and on September 11, 2019, Mr. Adell again sent Bishop Bloomer a close up of Bishop Bloomer from the "pimp meme":




70. Again, Bishop Bloomer objected to this race discrimination, harassment, and retaliation, and replied: “Not funny!!!!!”

71. The next day, and on September 12, 2019, Mr. Adell **again** sent Bishop Bloomer the same close up of Bishop Bloomer’s face from the “pimp meme.”

72. In response to this clear race discrimination, harassment, and retaliation to Bishop Bloomer’s previously-submitted race discrimination, harassment, and retaliation complaint, Bishop Bloomer sent Mr. Adell a response text message that constitutes another written race discrimination, harassment, and retaliation complaint, which states in relevant part:

> I told you I don’t like that tattoo business I told you that it was highly offensive **I told you I would see that as being races** [sic] I told you

> I do not play games with my name or my character and what you think is funny is not I'm going to ask you for the last time stop playing with me like that **I do not like it!!!!!!!** . . .

(Emphasis added).

73. In response, Mr. Adell responded by stating, *inter alia*, Bishop Bloomer was "So sensitive" and "WTF".

74. On September 15, 2019, Bishop Bloomer advised Mr. Adell, *inter alia*, that "preachers of [sic] telling folks over the pulpit that **the network is like a plantation**..." (emphasis added).

75. Defendants did not conduct any investigations for race discrimination and/or harassment and/or retaliation concerning or related to any complaints made by or involving Plaintiff in 2019.

76. Among other things, Mr. Adell responded by advising Bishop Bloomer to "stop saying it's a plantation you're making me mad", "If if [sic] you're trying to make me mad you're doing a very good job[.]"

77. Later that evening, Mr. Adell spoke to Bishop Bloomer on the phone.

78. Mr. Adell advised Bishop Bloomer that he did not appreciate Bishop Bloomer's complaints and objections to the "pimp meme" he sent Bishop Bloomer.

79. In response, Bishop Bloomer again objected to the racist "pimp meme."

80. Again, Mr. Adell ignored Bishop Bloomer's objections, and advised

Bishop Bloomer that he was "the only one upset about the meme."

81. Mr. Adell then proceeded to refer to himself as Bishop Bloomer's "pimp."

82. Mr. Adell also threatened to limit Bishop Bloomer's airtime on TWN and WNC.

83. During this telephone call, Mr. Adell advised Bishop Bloomer: "you mad about the meme… Well If I'm your pimp where's my money? Bring me my money!…"

84. In response, Bishop Bloomer advised Mr. Adell: "I'm out", thereby providing notice to Mr. Adell of his constructive discharge and/or termination.

85. In response, Mr. Adell advised Bishop Bloomer: "What are you going to do now, quit, like a little bitch? Where are you going to go, Impact? **I'll put you in my Rolls-Royce and drive your black ass over there**..."

86. Defendants failed to ever investigate or process Bishop Bloomer race discrimination, harassment, and retaliation complaints.

87. Mr. Adell continued to perpetuate the racially discriminatory, harassing, and retaliatory hostile work environment, which ultimately led to Bishop Bloomer's constructive discharge and/or termination and/or separation form employment.

88. Defendants assert that Bishop Bloomer's working relationship with

TWN and/or WNC ended before he sent the text message identified in in Paragraph 74.

89. Defendants assert that Bishop Bloomer's working relationship with TWN and/or WNC ended before September 4, 2019.

90. Kevin Adell previously stated that Bishop Bloomer was fired.

91. Upon information and belief, Kevin Adell previously stated that Bishop Bloomer was fired for misappropriating funds from The Word Network.

92. Kevin Adell also previously stated that Bishop Bloomer quit (i.e., resigned) because he wanted more airtime.

93. Defendants' "pimp meme" and response to Bishop Bloomer's race discrimination, harassment, and retaliation complaints provoked thousands of individuals in the African-American community to create and sign a petition boycotting TWN/WNC in support of African American clergies.

94. The petition states in relevant part:

> To ignore Bishop Bloomer's respectful request to end this line of text and comments is to ignore the dignity of the African-American community. Kevin Adell may own The Word Network but it is the Black community that made the network a success. If the Black community is not respected by The Word Network then we should pull our support from this network. The actions of Kevin Adell prove that we can no longer trust The Word Network to bring the Gospel into our homes… Boycott The Word Network by not watching the network and canceling The Word Network on your cable plans… **We cannot remain silent in the face of racism,** disrespect and ultimately the exploitation of our community and our faith.

(Emphasis added).

95. Bishop Bloomer was made to endure race discrimination, harassment, and retaliation in violation of Section 1981.

96. Plaintiffs were constructively discharged and/or terminated in violation of Section 1981 because Defendants created working conditions so intolerable that a reasonable person in the Plaintiffs' position would feel compelled to resign.

**COUNT I - AGAINST ALL DEFENDANTS**
**RACE DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 1981**

97. Plaintiffs reallege and adopt the allegations contained in paragraphs 1-96, as if fully set forth herein.

98. Bishop Bloomer was qualified for the position he held with Defendants.

99. Bishop Bloomer and GG Bloomer Ministries were discriminated against by Defendants because of Bishop Bloomer's race.

100. Both Plaintiffs were subjected to adverse working relationship because of Bishop Bloomer's race, including, but not limited to being: (1) denied income; (2) subjected to a hostile work environment based on race; and (3) constructively discharged and/or terminated.

101. Plaintiffs were treated less favorably than similarly situated workers or entities who were not African-American or owned and operated by an African-

American.

102. The actions of Defendants as alleged above had the purpose and effect of denying both Plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens because of Bishop Bloomer's race, in violation of Plaintiffs' rights under 42 U.S.C. § 1981.

103. The actions of Defendants as alleged above were intentionally and purposefully done to both Plaintiffs because of Bishop Bloomer's race.

104. As a direct, natural, proximate and foreseeable result of Defendants' discrimination, Bishop Bloomer also suffered past and future pecuniary losses, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

105. The actions of Defendants are in willful and wonton disregard of the rights of both Plaintiffs so as to entitle Plaintiffs to an award of punitive damages against Defendants to punish its conduct and to deter it and others from such conduct in the future.

106. Both Plaintiffs are entitled to recover reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. § 1988.

107. Both Plaintiffs, having been racially discriminated against by Defendants, have suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**COUNT II - AGAINST ALL DEFENDANTS**
**<u>RACE HARASSMENT IN VIOLATION OF 42 U.S.C. § 1981</u>**

108. Plaintiffs reallege and adopts the allegations contained in paragraphs 1-96, as if fully set forth herein.

109. Bishop Bloomer was qualified for the position held with Defendants.

110. Bishop Bloomer and GG Bloomer Ministries were harassed by Defendants because of Bishop Bloomer's race.

111. The racial harassment both Plaintiffs were subjected to created a racially hostile work environment.

112. The racial harassment both Plaintiffs were subjected to culminated in adverse employment actions, including, but not limited to being: (1) denied income; (2) subjected to a hostile work environment based on race; and (3) constructive discharged and/or terminated.

113. The actions of Defendants as alleged above had the purpose and effect of denying both Plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens because of Bishop Bloomer's race, in violation of Plaintiffs' rights under 42 U.S.C. § 1981.

114. The actions of Defendants as alleged above were intentionally and purposefully done to both Plaintiffs because of Bishop Bloomer's race.

115. As a direct, natural, proximate and foreseeable result of Defendants' harassment, Bishop Bloomer also suffered past and future pecuniary losses,

emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

116. The actions of Defendants are in willful and wonton disregard of the rights of both Plaintiffs so as to entitle Plaintiffs to an award of punitive damages against Defendants to punish its conduct and to deter it and others from such conduct in the future.

117. Both Plaintiffs are entitled to recover reasonable attorney's fees and litigation expenses pursuant to 42 U.S.C. § 1988.

118. Both Plaintiffs, having been racially harassed by Defendants, has suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**COUNT III - AGAINST ALL DEFENDANTS**
**RACE RETALIATION IN VIOLATION OF 42 U.S.C. § 1981**

119. Plaintiffs reallege and adopts the allegations contained in paragraphs 1-96, as if fully set forth herein.

120. Bishop Bloomer engaged in a protected activity, which includes objection and opposition to racial discrimination, harassment, and discrimination Defendants made both Plaintiff's endure.

121. On several occasions, Defendants took several adverse employment actions against both Plaintiffs because Bishop Bloomer engaged in protected activity including, but not limited to being: (1) denied income; (2) subjected to a hostile work

environment based on Bishop Bloomer's race; and (3) constructive discharge and/or termination.

122. Defendants' retaliatory actions were willful, deliberate, and intentional.

123. The injuries to both Plaintiffs that arose as a consequence of Defendants' conduct were foreseeable and intentionally caused by Defendants.

124. Defendants' retaliation would not have occurred had Bishop Bloomer not engaged in protected activity under Section 1981.

125. The actions of Defendants as alleged above had the purpose and effect of denying both Plaintiffs the same right to make and enforce contracts as is enjoyed by white citizens because of Bishop Bloomer's race, in violation of Plaintiffs' rights under 42 U.S.C. § 1981.

126. As a direct and proximate result of Defendants' violation of Section 1981, both Plaintiffs suffered economic damages including but not limited to, loss of income, back pay, front pay, and other expenses.

127. As a direct and proximate result of Defendants' violation of Section 1981, Bishop Bloomer has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

128. As a direct, natural, proximate and foreseeable result of the actions of

Defendants, Bishop Bloomer has suffered injuries for which he is entitled to compensation, including, but not limited to, future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

129. The conduct of Defendants was so willful, wanton and performed with malice or reckless indifference to the statutory rights of Plaintiffs, as to entitle Plaintiffs to an award of punitive damages against Defendants, to deter them, and others, from such conduct in the future.

130. Plaintiffs are entitled to recover reasonable attorney's fees and litigation expenses pursuant to Section 1981.

131. Plaintiffs have suffered irreparable harm for which there is no plain, adequate or complete remedy at law.

**COUNT IV – AGAINST DEFENDANTS TWN AND WNC**
**FOR BREACH OF CONTRACT**

132. Plaintiffs reallege and adopts the allegations contained in paragraphs 1-96, as if fully set forth herein.

133. Plaintiffs and Defendants entered into a valid written and/or oral contract, both express and implied-in-fact.

134. Defendants offered to compensate Plaintiffs a certain amount for the sale and/or promotion of *inter alia*, books, Bibles, audio Bibles, and oils in exchange for Bishop Bloomer hosting various programs for Defendants.

135. Plaintiffs accepted Defendants' offer, and Bishop Bloomer proceeded to host various programs for Defendants in the belief that Plaintiffs would be compensated for all sales at the agreed upon rates.

136. During the course of this contract, Bishop Bloomer sold several thousand Bibles, audio Bibles, and oils for the benefit of Defendants.

137. Plaintiffs were compensated by Defendants for some, but not all of the items Bishop Bloomer sold.

138. Defendants materially breached this contract with Plaintiffs and failed to compensate Plaintiffs for their complete portion of the sales.

139. As a direct result of this breach of contract, Plaintiffs have suffered monetary damages.

140. Defendants claim that they did not purchase any books from Bloomer Ministries since 2018.

141. Defendants claim Bloomer's last show aired on May 8, 2019.

142. Defendants claim that there was no contractual relationship between the parties in September 2019.

**COUNT V – AGAINST DEFENDANTS TWN AND WNC**
**<u>FOR QUANTUM MERUIT</u>**

143. Plaintiffs reallege and adopts the allegations contained in paragraphs 1-96, as if fully set forth herein.

144. Defendants offered to compensate Plaintiffs a certain amount for the

sale and/or promotion of *inter alia*, books, Bibles, audio Bibles, and oils in exchange for Bishop Bloomer hosting various programs for Defendants.

145. Plaintiffs accepted Defendants' offer, and Bishop Blomer proceeded to host various programs for Defendants in the belief that Plaintiffs would be compensated for all sales at the agreed upon rate.

146. Plaintiffs sold several, *inter alia*, thousands of Bibles, audio Bibles, and oils for the benefit of Defendants.

147. Plaintiffs were compensated by Defendants for some, but not all of the items sold.

148. As a direct result of Defendants' failure to compensate Plaintiffs for all items sold, Defendants were unjustly enriched and Plaintiffs have suffered monetary damages in the form of lost income.

**COUNT VI – AGAINST DEFENDANTS TWN and WNC**
**FOR UNJUST ENRICHMENT**

149. Plaintiffs reallege and adopts the allegations contained in paragraphs 1-96, as if fully set forth herein.

150. Defendants offered to compensate Plaintiffs a certain amount for the sale and/or promotion of *inter alia*, books, Bibles, audio Bibles, and oils in exchange for Bishop Bloomer hosting various programs for Defendants.

151. Plaintiffs accepted Defendants' offer and proceeded to host various programs for Defendants in the belief that Plaintiffs would be compensated for all

sales at the agreed upon rate.

152. Bishop Bloomer sold, *inter alia*, several thousand Bibles, audio Bibles, and oils for the benefit of Defendants.

153. Plaintiffs were compensated by Defendants for some, but not all of the items he sold.

154. As a direct result of Defendants' failure to compensate Plaintiffs for all items sold, Defendants were unjustly enriched and Plaintiffs have suffered monetary damages in the form of lost income.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs pray for damages in an amount to be determined at trial, together with interest, cost of suit, attorneys' fees, and all such other relief as the court deems just and proper which include:

a. Declare that the aforementioned practices and actions of Defendants as constituting unlawful employment practices in violation of Section 1981;

b. Award Plaintiffs all lost income, past and future, and other monetary damages to which Plaintiffs are entitled to including interest under Section 1981;

c. Award Plaintiffs lost wages, benefits and all other forms of compensation lost as a result of Defendants' breach of contract,

quantum meruit, and unjust enrichment;

d. Award Plaintiffs compensatory damages under Section 1981;

e. Award Plaintiffs punitive damages under the Section 1981;

f. Award Plaintiffs reasonable attorney's fees, costs, and interest;

g. Award Plaintiffs equitable relief including, but not limited to: an injunction directing Defendants to cease their discriminatory conduct and practices; full reinstatement to Plaintiffs' working relationship with Defendants under Section 1981; and

h. Award all other relief that this Court deems just and proper, as well as and any other relief available under Section 1981, breach of contract, quantum meruit, and unjust enrichment.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

Respectfully submitted,

Dated: November 28, 2022

By: */s/ Michael N. Hanna*
MICHAEL N. HANNA
MORGAN & MORGAN, P.A.
Michigan Bar No.: P81462
Florida Bar No.: 85035
2000 Town Center, Suite 1900
Southfield, MI 48075
(313) 251-1399
mhanna@forthepeople.com

Corey Asay
Morgan & Morgan, P.A.
333 West Vine St., Suite 1200
Lexington, KY 40507
casay@forthepeople.com

*Attorneys for Plaintiffs*

---

I, Bishop George Bloomer, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746 that the factual allegations in this Complaint are true and correct based on my personal knowledge.

Dated: Nov 28, 2022

George Bloomer
George Bloomer (Nov 28, 2022 14:29 EST)
BISHOP GEORGE BLOOMER

**CERTIFICATE OF SERVICE**

The undersigned certifies that on November 28, 2022, the foregoing document was filed using the CM/ECF system, which will send notice of same to all counsel of record.

*/s/ Michael N. Hanna*
Michael N. Hanna (P81462)
Attorney for Plaintiff