UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GEORGE BLOOMER and GG BLOOMER MINISTRIES,

Plaintiffs,

v.

THE WORD NETWORK OPERATING COMPANY, INC., et al.,

Defendants.
______________________________________/

Case No. 2:22-cv-12433

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER ON DEFENDANTS' MOTIONS *IN LIMINE* (ECF Nos. 103; 104; 105) AND PLAINTIFFS' MOTION *IN LIMINE* (ECF No. 106)**

Plaintiff Bishop George Bloomer is an African American pastor and author who used to appear on Defendants' Christian televangelism network as a show host and salesman for spiritual products. But when the network's founder, sole owner, and CEO, Defendant Kevil Adell, made comments and "jokes" that Bloomer objected to as racist and offensive, Bloomer alleges that their professional relationship ended through a constructive discharge. Now, Bloomer is suing Adell, his network, and his programming organization for racial discrimination, harassment, and retaliation in violation of 42 U.S.C. § 1981. Bloomer also brings breach of contract, quantum meruit, and unjust enrichment claims under Michigan

law, alleging that Defendants failed to compensate Bloomer for commissions from Bloomer's sales of the endorsed products.

After summary judgment, all claims remain except for Bloomer's claims based on commissions for some products and Plaintiff GG Bloomer Ministries' claims for hostile work environment. A jury trial is scheduled to begin October 6, 2026. In advance of trial, the Parties have filed motions *in limine*. Defendants move to preclude certain anticipated character evidence, evidence from news articles, and testimonial evidence from former employees. Plaintiffs object and also move generally to preclude evidence of former claims, anticipated character evidence about Bloomer's bad acts or Adell's good deeds, the testimony of another Bishop, and evidence about any alleged performance problems on Bloomer's behalf. ECF No. 106 at PageID.3147.

On September 29, 2026, this Court held a hearing on the motions and ruled from the bench. The following is an accompanying Opinion re-articulating this Court's rulings in further detail.

## I. BACKGROUND

The following facts are reproduced from the prior order on Defendants' motion for summary judgment. ECF No. 89.

**A. Alleged Contractual Relationship**

Bishop Bloomer, who is African American, is a televangelist, pastor and author. Bloomer is the sole owner of Plaintiff GG Bloomer Ministries (GGB), a non-profit corporation through which Bloomer coordinates his commercial speaking engagements and sells his books. Kevin Adell, who is Caucasian, is the founder, sole owner, and CEO of Defendant The Word Network Operating Company, Inc. (TWN), touted to be the largest African American religious broadcasting network in the world. TWN is a for-profit corporation which sells airtime to ministers and has master control over its broadcast signal. Adell is also the president and CEO of Defendant Church of the Word (WNC), a non-profit ecclesiastical organization which produces religious programming for TWN. WNC also operates a call center where viewers can call in donations or purchase religious items marketed during certain programs.

Bloomer first interacted with TWN in the early 2000s when he paid $2,000 a week for a timeslot to broadcast his self-produced Sunday morning show, *Spiritual Authority*. ECF No. 83-5 at PageID.1514–15. In 2011, Adell offered Bloomer the opportunity to host *Rejoice in the Word*, a show produced by WNC and aired on TWN. Adell insisted on handshake agreements and did not have written agreements with any of the on-air preachers, including Bloomer. Plaintiffs did not pay Bloomer for hosting *Rejoice in the Word* or for his work on any of the other programs. With

Bloomer as host, donation revenues began to increase. Bloomer renegotiated his arrangement with Adell and the parties agreed that as long as Bloomer hosted *Rejoice in the Word*, he would not be charged for airtime for *Spiritual Authority*. *Id.* at PageID.1521–22.

Around this time, Adell agreed to pay Bloomer $10 for each GGB book sold through the WNC call center. *Id*. at PageID.1521. GGB issued an invoice to WNC for $10 per book sold, purchased the book from the publisher, and had it shipped to WNC. WNC was to pay the invoiced amount to GGB and deliver the book to the buyer. Sometimes WNC did not pay the invoices, so Plaintiffs did not ship the books until they were paid. The parties disagree whether Plaintiffs paid all the invoices issued by GGB.

In 2014, Bloomer began promoting WNC products during his shows, consisting primarily of bibles and anointed oil. *Id.* at PageID.1523. Bloomer contends he and Adell agreed Bloomer would be paid $10 in commission for the sale of each WNC bible and $2 for the sale of the oils. *Id.* at PageID.1523, 1529. Adell disputes the existence of such an agreement. *See Id.* at PageID.1524–25. TWN's former Operations Manager David Sheffield confirmed he had personal knowledge of a verbal agreement between Bloomer and Adell whereby Adell agreed to pay Bloomer $10 for each bible and religious books sold on the shows he hosted. ECF No. 85-9 at PageID.2683. TWN's former Data Manager and Call Center Director,

Jeffrey Thurman, confirmed he personally witnessed Adell agree to compensate Bloomer for each item sold on his programs. ECF No. 85-8 at PageID.2679.

Unlike with sales of BBG items, Bloomer did not issue invoices for WNC products sold during his programs. Bloomer explained this was because WNC purchased the bibles directly from their publisher, so only WNC had records of orders and sales. ECF No. 83-5 at PageID.1531. There are no invoices or accountings documenting commissions due on the sale of WNC products. Bloomer testified he tried to collect payment by "talk[ing] to [Adell] from time to time." *Id.* at PageID.1534.

To calculate damages, Plaintiffs offer estimates provided by Jeffrey Thurman, who states that Bloomer sold over 100,000 copies of the Bible Experience, 50,000 to 100,000 copies of the Spiritual Warfare Bible, 40,000 to 50,000 copies of the Subject Bible, and 100,000 bottles of the anointed oil. ECF No. 85-8 at PageID.2679. Thurman also states that Bloomer exclusively promoted the WNC Bibles. *Id.* at PageID.2679.

**B. Alleged Discrimination**

On September 4, 2019, Malea Howard and Denise Johnson, who both worked at TWN, showed Adell an article written about him entitled "Black Gospel Network PIMP Kevin Adell." The article contained a digitally created image (the "meme") of Adell's face superimposed on the body of a man wearing a white fur coat and

standing in front of a white limousine. Adell is surrounded by four African American men, bearing the faces of Bloomer and other on-air preachers. The preachers are portrayed to be much smaller than Adell. Bloomer is depicted wearing a white tuxedo and a black bow tie.

Adell showed Bloomer the meme when they were at work. Bloomer testified that Adell considered the meme a joke and "was laughing and he was proud of it." ECF No. 83-5 at PageID.1568. Bloomer told Adell the meme was racist and was going to be a huge problem for the network. *Id.* at PageID.1571. Later that day, Adell texted the meme to Bloomer with the messages: "You look like a midget", "A tattoo from fantasy island", and "I didn't know they made Tuxedos that small". ECF No. 85-15 at PageID.2716. Bloomer responded that he did not think Adell's comments were funny and he found the meme to be racist:

> That's not funny that has a racist connotation to it that pimp thing get rid of that as quickly as you possibly can it's not funny it's equivalent to a black face being put on a white man I'm telling you it's not funny[.]

*Id.*

Adell testified that Bloomer was bothered because he looked like a midget in the meme, so Adell referred to Bloomer as the character Tattoo, who wore a white tuxedo on the television show *Fantasy Island*. ECF No. 83-3 at PageID.1426. Adell answered Bloomer's text with a picture of Tattoo. *Id*. The following day, Adell texted Bloomer a picture of himself with another white man whose face had been scribbled

over with a black marker. ECF No. 85-15 at PageID.2718. Bloomer considered this photo to be a response to his comment that the meme was the equivalent of black face on a white man. ECF No. 83-5 at PageID.1551, 1569.

On September 11, 2019, Adell texted Bloomer a close-up of Bloomer's face from the meme, referring to Bloomer as "Tattoo". ECF No. 85-15 at PageID.2721. Bloomer responded: "Not funny!!!!!". *Id.* The following day, Adell re-texted the same picture. Bloomer responded that he considered the meme and being called Tattoo to be racist and asked Adell to stop joking about it:

> I told you I don't like that tattoo business I told you that it was highly offensive I told you I would see that as being races [sic] I told you I do not play games with my name or my character and what you think is funny is not I'm going to ask you for the last time stop playing with me like that I do not like it!!!!!!!

ECF No. 85-15 at PageID.2722. Adell responded with: "OK!!!!", "Got it", "So sensitive" and "WTF". *Id.*

Malea Howard, who is African American, said that she found Adell's remarks to Bloomer regarding the meme to be racist and offensive. ECF No. 85-13 at PageID.2698. Denise Johnson, who is also African American, found Adell's remarks to Bloomer about the meme to be racially insensitive and offensive. ECF No. 85-14 at PageID.2701. Johnson witnessed Adell on a phone call with Bloomer wherein Bloomer objected to Adell's harassment in sending the meme and advised Adell that it was not funny. Adell responded by dismissing Bloomer's complaint and hanging

up the phone. *Id.* at PageID.2701. Johnson said she believed that Bloomer's race was a factor in the degree of disrespect he received from Adell. *Id.* at PageID.2702.

In between the texts about the memes, the two men texted about other business issues, including Adell telling Bloomer how much money had been made selling prayer shawls. ECF No. 85-15 at PageID.2719.

On September 15, Bloomer sent Adell a text message describing "serious problems that no one is telling you about". ECF No. 85-15 at PageID.2725. Among the issues described by Bloomer was that booked gospel artists were telling people that the network treats them poorly; preachers were saying from the pulpit that the network is like a plantation; some customers have waited six months to receive items they bought and paid for; Bloomer himself sent out 1700 late packages at his own expense. Bloomer believed these issues were leading to low revenue and problems booking guests.

Bloomer also asked for more airtime, explaining that showing up once a month does not build followers and "consistency is going to be our key to success[.]" *Id.* Adell responded by disagreeing with Bloomer's facts and saying that his comparison of TWN to a plantation made him mad. He added that if Bloomer no longer wants to be on TWN, he should call and not use text. *Id.* Adell testified that in response to Bloomer's text, he probably asked someone to see how many slots

Bloomer was given on the network, so he could take them away. He referred to restricting airtime as "the whip." ECF No. 83-3 at PageID.1435.

Bloomer describes a phone call he had with Adell the night of September 15. Adell said he did not appreciate Bloomer's complaints about the meme. He then referred to himself as Bloomer's pimp and said that Bloomer should "bring me my money!" ECF Nos. 17 at PageID.283–84; 83-5 at PageID.1555. Adell also threatened to limit Bloomer's airtime on TWN. The conversation ended with Bloomer saying, "I'm out." Adell asked Bloomer if he was going to TWN's competitor, allegedly saying, "I'll put you in my Rolls Royce and I'll drive your black ass over there." *Id*. at PageID.284 at PageID.1571.

The next day, Bloomer texted Adell that he was taking time off from TWN. He expressed his disappointment in how he has been treated, mentioning the late delivery of books purchased by his followers and Adell's failure to pay him commissions earned for selling thousands of WCN bibles. ECF No. 85-15 at PageID.2726. At his deposition, Bloomer stated that he quit for many reasons but that the delay in shipping his books to purchasers, as well as the meme, were "the straw[s] that broke the camel's back." ECF No. 83-5 at PageID.1555, 1571–72. Bloomer described the racist meme and the fact that Adell would not stop referring to the meme despite Bloomer's objections as "the point of no return." *Id.* at PageID.1571.

Bloomer states that Adell's racist treatment of him spurred a boycott petition in support of African American clergy. After describing Adell's actions and statements regarding the meme, the petition urges the Black community to boycott TWN and cancel the network on their cable plans. ECF No. 85-17 at PageID.2745. The Detroit Chapter of the National Association of Black Journalists sent Adell a letter condemning his "participation in the delivery of a tone deaf, racist meme that portrays ministers featured on your network in the vilest of stereotypes." ECF No. 85-18 at PageID.2748. On November 4, 2019, Adell issued an apology to Bloomer.

**C. Procedural History**

On October 12, 2022, Plaintiffs brought suit. ECF No. 1. In Counts I, II and III of the Complaint, Plaintiffs allege that Adell, TWN and WNC violated 42 U.S.C. § 1981 by discriminating, harassing and retaliating against them, with the purpose of denying them the right to make and enforce contracts, based on Bloomer's race. ECF No. 17 at PageID.286–91. Count IV alleges breach of contract for the payment of commissions. *Id.* at PageID.191–92. Counts V and VI assert alternative causes of action for the recovery of commissions under equitable theories. *Id.* at PageID.292–94.

On June 4, 2025, District Judge Nancy G. Edmunds[1] issued an opinion and order, ECF No. 89, granting in part and denying in part Defendants' motion for summary judgment, ECF No. 83. She granted the motion in two limited respects: first, the motion was granted for Counts I–IV "as to Plaintiffs' claims based on commissions for WNC products." ECF No. 89 at PageID.2915. Second, the motion was granted for Count II "as to claims made by GGB." *Id.* The motion was denied in all other respects, leaving portions of all six counts surviving. *See id.*

In advance of trial, Defendants filed three motions *in limine* and Plaintiffs filed one. *See* ECF Nos. 103–106. The motions are fully briefed. *See* ECF Nos. 107–114. On September 29, 2026, this Court held a hearing on the motions and denied all motions except for one with respect to two exhibits. *See* ECF No. 100. In accordance with that hearing, this Opinion articulates in detail this Court's findings and reasoning.

## II. LEGAL STANDARD

"A 'motion *in limine*' is any motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Good v. BioLife Plasma Servs., L.P.*, 605 F. Supp. 3d 947, 955 (E.D. Mich. 2022), *recon. den.*, 647 F. Supp. 3d 555 (E.D. Mich. 2022) (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir.

[1] On January 13, 2026, this case was reassigned from Judge Edmunds pursuant to Local Rule 83.11.

2013)). Motions *in limine* are designed "to narrow the issues remaining" and "minimize disruptions," *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999), to help ensure "evenhanded and expeditious management of trials," *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015), *aff'd in part*, 677 F. App'x 294 (6th Cir. 2017) (citations omitted). Indeed, "the Supreme Court has allowed district courts to rule on motions *in limine* 'pursuant to the district court's inherent authority to manage the course of trials.'" *Id.* (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)).

"A district court should grant a motion to exclude evidence *in limine* 'only when [that] evidence is clearly inadmissible on all potential grounds.'" *Id.* (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)). "In cases where that high standard is not met, 'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.'" *Id.* (quoting *Ind. Ins. Co.*, 326 F. Supp. 2d at 846); *see also Good*, 605 F. Supp. 3d at 955; *Figgins v. Advance Am. Cash Advance Ctrs. of Mich., Inc.*, 482 F. Supp. 2d 861, 865 (E.D. Mich. 2007) ("It may be desirable in many cases to defer ruling on objections until trial.").

Even when a court denies a motion *in limine*, that "does not necessarily mean that the court will admit the evidence at trial." *Phillips*, 146 F. Supp. 3d at 841. Rather, "[d]enial merely means that without the context of trial, the court is unable

to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

## III. DISCUSSION

### A. Defendants' Motions

*1. Anticipated "Bad Character" Evidence (ECF No. 103)*

Defendants anticipate that Plaintiffs will use portions of Bloomer's deposition testimony that describe Adell's previous, insensitive comments as impermissible character evidence. ECF No. 103 at PageID.2960, 2962–63. In their motion, Defendants ask this Court to preclude "Bloomer—and any other witnesses—from presenting evidence on any insensitive comments Adell may have made on any characteristic other than race," arguing that the evidence is not only prohibited by Federal Rule of Evidence Rule 404 but also by Rules 401 and 403 because the comments are irrelevant and prejudicial "wholly unrelated to race." *Id.* at PageID.2963. Plaintiffs state that they do not intend to use the identified portions of Bloomer's testimony for general "bad character" evidence, reserving it only for impeachment and rebuttal purposes if Defendants attempt to offer "good character" evidence. ECF No. 108 at PageID.3195. Plaintiffs contend that Defendants' request to prevent evidence from anyone about any insensitive but non-racial comments is overbroad, and that ultimately Defendants' motion is moot and need not be decided before trial. *Id.* This Court will deny the motion in the following respects.

Under Federal Rule of Evidence 404(a), "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." FED. R. EVID. 404(a)(1). But because Plaintiffs respond that they do not intend to use the identified testimonial evidence in their case-in-chief, Defendants' motion with respect to this evidence is moot. *See Ferguson v. Marysville Hous. Comm'n*, No. 2:23-cv-11094, 2025 WL 2822465, at *3 (E.D. Mich. Oct. 3, 2025) (denying a motion *in limine* as moot where the "[d]efendant responded that it does not intend to offer evidence" identified in the motion).

To the extent that Plaintiffs reserve potential use of such evidence for impeachment and rebuttal to any "good character" evidence that is impermissible under Rule 404, this Court need not make any such determinations at this time as the issue is premature and this Court is already required to follow the rules of evidence during trial. *See Rogers v. Ryan*, No. 16-12735, 2020 WL 6335995, at * 2 (E.D. Mich. Oct. 29, 2020) (denying a motion to preclude evidence that the opposing party said it would only use as possible impeachment evidence as premature because whether a party may use evidence "for impeachment purposes is a determination that cannot be made without knowing what the specific evidence is and the context in which it is offered"); *see also Univ. Tenn. Rsch. Found. v. Caelum Biosciences, Inc.*, No. 3:19-cv-508, 2024 WL 4011957, at *8 (E.D. Tenn. Sept. 1, 2024) ("The Court

intends to follow the Federal Rules of Evidence at trial and expects the parties to do the same. Clearly, [the plaintiff's] experts will not be permitted to testify using the same legal conclusions [that the defendant's] experts have been precluded from offering.").

As for Defendants' request to preclude any evidence from anyone about Adell's insensitive comments unrelated to race, this is both premature and improperly beyond the scope of their motion concerning specific testimony. *See Rogers*, 2020 WL 6335995, at * 2 (denying a motion that sought to preclude "any evidence, argument, or comment from any source whatsoever" as not specific enough and premature) (internal quotation marks and citation omitted); *see also Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712(6th Cir. 1975), *cert. den.* 423 U.S. 987 (1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed."). Therefore, this broad request will be denied without prejudice.

*2. News Articles Criticizing TWN (ECF No. 104)*

Defendants move to prevent the use of certain news articles (labeled as Exhibits A, B, and C) about a TWN telethon, TWN's marketing tactics, and a boycott against TWN as evidence "to (at least) create an unfavorable impression of Defendants," arguing that the articles are inadmissible hearsay, irrelevant, unduly prejudicial, and impermissible character evidence under the Federal Rules of

Evidence. ECF No. 104 at PageID.3036–37. Plaintiffs respond that this Court should deny the motion in three ways: (1) this Court should deny the motion outright as to two items in Exhibit C because they are not news articles, not hearsay, and were relied upon in the summary judgment order; (2) this Court should deny the motion without prejudice as to the news articles in Exhibit C to defer its ruling until trial where "[a]dmissibility will depend on why a particular article is offered and what foundation is laid"; and (3) this Court should deny as moot the motion with respect to all other articles because Plaintiffs do not intend to offer in their case-in-chief. ECF No. 109 at PageID.3205. Each set of exhibits will be addressed in turn.

a. Letter and Petition

Plaintiffs are correct that two items in Exhibit C are not news articles: one is a letter from the Detroit chapter of the National Association of Black Journalists (NABJ) written to Adell, and the other is a change.org petition and update. ECF No. 104-4 at PageID.3072, 3075–81. Because the NABJ letter and petition are not news articles, this Court will not exclude them on that basis. *Cf. Harwood v. N. Am. Bancard LLC*, 2022 WL 246772, at *4 (E.D. Mich. July 6, 2022) ("It is well established that, if offered for the truth of the matter asserted, news articles are inadmissible hearsay.") (collecting cases); *see also Davis v. Detroit Pub. Schs. Cmty. Dist.*, 835 F. App'x 18, 22 (6th Cir. 2022) (holding that newspaper articles constitute inadmissible hearsay when offered for the truth of the asserted matter).

Nor are the items necessarily inadmissible hearsay on other grounds.[2] Under Federal Rule of Evidence 801(c), "a statement other than one made by the declarant while testifying at [] trial . . . *to prove the truth of the matter asserted*" is often considered hearsay and therefore not admissible as evidence at trial. *McLeod v. Parsons Corp.*, 73 F. App'x 846, 856 (6th Cir. 2003) (quoting FED. R. EVID. 801(c)) (emphasis added). But here, Plaintiffs state that they are not offering the NABJ letter and petition to prove the truth of the assertions within each. Rather, Plaintiffs offer these items to prove what the community's reaction was to Adell's conduct, that Adell was aware of this reaction, and what Adell did in response. ECF No. 109 at PageID.3208. By that same reasoning, the items are not precluded under Rule 404 because they are not being offered as character evidence. *See* FED. R. EVID. 404(a) (prohibiting evidence of a person's character to prove that the individual "acted in accordance with the character").

The items are also relevant. Under Federal Rule of Evidence 402, only relevant evidence is admissible. FED. R. EVID. 402. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. As the Sixth Circuit has recognized, Rule 401 sets a "low bar" for relevance.

---

[2] That said, the petition contains hearsay statements by Bloomer. *See* ECF No. 104-4 at PageID.3075.

*United States v. Lang*, 717 F. App'x 523, 539 (6th Cir. 2017). Given that this Court expressly relied on these items to deny summary judgment in most respects regarding allegations of a hostile work environment, discrimination, and harassment, these items clear the "low bar." *See id.*; *see also* ECF No. 89 at PageID.2910 ("The boycott petition and the letter sent by the Detroit Chapter of the [NABJ] also shows that others in the community found the meme and Adell's treatment of Bloomer to be racist.").

However, this Court finds that the risk of undue prejudice outweighs the items' probative value. Under Federal Rule of Evidence 403, courts "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. The Sixth Circuit defines unfair prejudice as the "undue tendency to suggest a decision based on improper considerations[.]" *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999). Indeed, "the prejudice inquiry asks whether the jury was likely to consider the statement for the truth of what was stated with significant resultant prejudice." *United States v. Adams*, 722 F.3d 788, 831 (6th Cir. 2013) (citation modified).

The NABJ letter and petition contain strong language that concludes Adell's conduct was racist, a finding that the jury must make. *See* ECF No. 104-4 at

PageID.3072 (condemning Adell's "delivery of a tone deaf, racist meme" as "repulsive" and "the vilest of stereotypes"); *see also id.* at PageID.3075 (calling for a boycott against TWN because "Adell does not have regard for the Black community"). In fact, the petition outlines Bloomer's accusations as facts. *See id.* (stating that Adell's texts about the meme "created a hostile work environment for Bishop Bloomer and others"). A jury is likely to believe that the NABJ letter and petition are evidence that Bloomer was discriminated against, even with a limiting instruction. *See Harwood*, 2022 WL 2467722, at *6.

Furthermore, this Court notes that references to a boycott petition being circulated and the NABJ sending Adell a letter are admissible facts "with the same probative value [to show communal reactions or knowledge thereof] but without the unfair prejudice." *Adams*, 722 F.3d at 831; *see also United States v. Merriweather*, 78 F.3d 1070, 1077 (6th Cir. 1996) ("One factor in balancing unfair prejudice against probative value under Rule 403 is the availability of other means of proof."). As are, as Plaintiffs admit, the statements Adell made about the items, boycott, and overall community reaction in his deposition testimony. *See* ECF No. 109 at PageID.3210–11 (citing Adell's testimony in ECF No. 85-3 at PageID.2604–10). Thus, Adell's testimony and the fact that the NABJ letter and petition exist are all admissible, probative evidence, but the exhibits' specific contents are unduly prejudicial. *See id.*

Therefore, this Court will grant Defendants' motion with respect to the NABJ letter and the petition. *See* FED. R. EVID. 403.

b. Exhibit C News Articles

This Court will deny without prejudice Defendants' motion with respect to the five news articles in Exhibit C as their admissibility will depend on their intended use and context for each on an item-by-item basis at trial. *See United States v. Certain Land Situated in City of Detroit, Wayne Cnty., State of Mich.*, 547 F. Supp. 680, 681–82 (E.D. Mich. 1982). Although they are very likely to be inadmissible hearsay or unduly prejudicial, there are limited circumstances in which these articles may be admissible, depending on trial circumstances. *See, e.g.*, *McDonald v. City of Memphis*, No. 2:12-cv-2511, 2016 WL 8201168, at *5 (W.D. Tenn. Aug. 26, 2016) ("Of course, use for impeachment purposes must be decided at trial."). Indeed, the Sixth Circuit cautions against "any broad pretrial exclusion of evidence," because granting motions in limine "is generally confined to very specific evidentiary issues of an extremely prejudicial nature." *Id.* (citing *Sperberg*, 519 F.2d at 712). This Court heeds the fact that dealing "with questions of admissibility of evidence when they arise" is generally a better practice. *Sperberg*, 519 F.2d at 712. Therefore, this Court will deny without prejudice the motion as to the five news articles in Exhibit C.

c. Remaining Materials

Plaintiffs have stated that they do not intend to offer the remaining materials as evidence. ECF No. 109 at PageID.3215. Therefore, Defendants' motion with respect to this evidence is moot, and this Court will deny it accordingly. *See Ferguson*, WL 2822465, at *3.

*3. Anticipated Testimony from Former Employees (ECF No. 105)*

Under Federal Rules of Evidence 403, 404(a), 602, and 801, Defendants raise 10 objections to anticipated testimony from five "former disgruntled employees" of Defendants, arguing that their statements will be speculative and not grounded in firsthand knowledge. ECF No. 105 at PageID.3097–99. Plaintiffs oppose the motion, arguing mainly that this motion is premature because issues of firsthand knowledge are foundational to be established at trial. ECF No. 110 at PageID.3225–27. This Court finds that such motions are, indeed, premature as the exact nature of the testimony, its use, and the declarant's knowledge are all issues that will arise at trial. *See United States v. Wandahsega*, No. No. 2:16-cr-20, 2017 WL 11483486, at *1 (W.D. Mich. Oct. 4, 2017) (recommending to deny motions *in limine* "[b]ecause the admissibility of the evidence depends on the testimony at trial"), *report and recommendation adopted by* 2017 WL 11483485 (W.D. Mich. Oct. 19, 2017); *see also Jordan v. Krystal Co.*, No. 1:09-CV-142, 2010 WL 4025866, at *4 (E.D. Tenn. Oct. 12, 2010) (finding that the motion *in limine* were "dependent on the witness'

testimony at trial" and allowing the parties to "rase any evidentiary objections related to this issue at trial" instead of granting the motion). Therefore, this Court will deny the motion without prejudice and address any such issues at trial should they emerge. *See Sperberg*, 519 F.2d at 712; *see also Wandahsega*, 2017 WL 11483486, at *1.

**B. Plaintiffs' Motion**

In Plaintiffs' motion *in limine*, they seek: (1) to preclude evidence about former claims or lawsuits; (2) to preclude character evidence testimony by Bishop Charles Ellis, or, alternatively, to get a proffer about what will be said, its relevance, and its admissibility; (3) to preclude "testimony related to purported unrelated 'bad acts' concerning" Bloomer; (4) to preclude "testimony concerning any alleged performance problems"; and (5) to preclude "evidence of other purported good deeds performed by one or more of the defendants." ECF No. 106 at PageID.3147–50. Defendants oppose the motion, arguing that the generic requests about "bad acts" and "good deeds" are not specific enough to identify clearly inadmissible evidence. ECF No. 107 at PageID.3155, 3157–58. Regarding Ellis, Defendants respond that he should be allowed to testify to firsthand knowledge of the events and to rebut any character evidence that Plaintiffs raise. *Id.* at PageID.3153–55. Also, Defendants contend that the "performance problems" request is also not specific and that the evidence generally is highly relevant to the relationship breakdown with Defendants. *Id.* at PageID.3156–58.

The first category of evidence is a moot issue and will be denied accordingly because Defendants have already stated that they do not intend to bring evidence of former claims. *See Ferguson*, WL 2822465, at *3.

The third and fifth categories do not identify specific exhibits or testimony Plaintiffs seek to have precluded. As such, this Court will deny without prejudice the requests about potential "bad acts" and "good deeds," for lack of specificity and prematurity, noting again that this Court will follow the federal rules of evidence should impermissible evidence be raised and objected to at trial. *See Certain Land*, 547 F. Supp. at 681–82; *see also Sperberg*, 519 F.2d at 712; *Rogers*, 2020 WL 6335995, at * 2; *Caelum Biosciences*, 2024 WL 4011957, at *8.

Regarding Ellis's anticipated testimony and evidence of Bloomer's performance, this Court will deny the motion without prejudice. As noted, the bar for relevance is low, requiring that the evidence be consequential and tends to make a fact more or less probable. FED. R. EVID. 401; *see also Lang*, 717 F. App'x at 539. The admissibility of Ellis's testimony again depends on how it is presented and used at trial. *See Wandahsega*, 2017 WL 11483486, at *1; *see also Jordan*, 2010 WL 4025866, at *4. And properly established testimony about Bloomer's work performance is relevant as a counternarrative that Bloomer left because of performance issues rather than as Bloomer alleged—that he was constructively discharged. *See Sanborn v. Parker*, No. 3:99 CV P678 C, 2005 WL 5190487, at *41

(W.D. Ky. Jan. 12, 2005) ("Relevant evidence is that which tends to establish *or disprove* an issue in litigation.") (emphasis added); *see also Reeves v. Comm'r of Soc. Sec. Admin.*, No. 3:19-cv-00996, 2021 WL 800850, at *8 (M.D. Tenn. Jan. 26, 2021) ("Relevant evidence is defined as evidence tending to prove or disprove a matter in issue.") (quoting BLACK'S LAW DICTIONARY (10th ed. 2014)). These requests—including one for a proffer about Ellis's potential testimony—are premature and not necessary to ensure that this Court follows the rules of evidence at trial. *See Caelum Biosciences*, 2024 WL 4011957, at *8.

In sum, the request to preclude the NABJ letter and the petition as admitted exhibits is granted, and all other requests in these motions are denied as moot or without prejudice. Specifically, the motions are addressed as follows:

| Motion ECF No. | Evidence | Posture |
|---|---|---|
| 103 | "Bad character" evidence from any witness | Denied as moot/without prejudice |
| 104 | NABJ letter exhibit | Granted |
| 104 | Petition exhibit | Granted |
| 104 | Exhibit C news articles | Denied without prejudice |
| 104 | Exhibits A and B articles | Denied as moot |
| 105 | Former employee testimony | Denied without prejudice |
| 106 | Former claims/lawsuits | Denied as moot |
| 106 | Ellis testimony | Denied without prejudice |
| 106 | "Bad acts" evidence about Bloomer | Denied without prejudice |
| 106 | "Performance problem" evidence about Bloomer | Denied without prejudice |
| 106 | Purported "good deeds" evidence about Defendants | Denied without prejudice |

## IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendants' motion *in limine*, ECF No. 103, is **DENIED AS MOOT IN PART AND WITHOUT PREJUDICE IN PART**.

It is further **ORDERED** that Defendants' motions *in limine*, ECF No. 104, is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE**.

It is further **ORDERED** that Defendants' motions *in limine*, ECF No. 105, is **DENIED WITHOUT PREJUDICE**.

It is further **ORDERED** that Plaintiffs' motion *in limine*, ECF No. 106, is **DENIED AS MOOT IN PART AND WITHOUT PREJUDICE IN PART**.

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: October 2, 2026